Eastern Dist.
April, 1836.

WEEKS
vs.
FLOWER ET AL.

---

## WEEKS vs. FLOWER ET AL.

9L 379
50 260
9L 380
52 984

APPEAL FROM THE COURT OF THE THIRD JUDICIAL DISTRICT, THE JUDGE OF THE EIGHTH PRESIDING.

Where a purchaser is in possession under a conveyance, the question of fraud cannot be inquired into collaterally, in a case commencing with a seizure; the party complaining must bring a direct revocatory action.

Where a plaintiff in injunction, sues for vindictive damages, alleging his possession of the property seized and which he has enjoined, the defendant may repel the action, by showing that the contract of sale under which the plaintiff claims and bases his right, is a simulation, and intended to cover the property from the defendant's claim against the true owner.

The plea of *litis pendentia* is a declinatory exception, which comes too late after the swearing of the jury. In order to avail the party, it must show the pendency of another suit, between the same parties, for the same object, growing out of the same cause of action, before another court of concurrent jurisdiction.

EASTERN DIST.  A continuance will not be granted after the trial has commenced and
*April,* 1836.        evidence gone into, on account of sickness of counsel. It is too late at
                    this stage of a cause, to pray for a continuance.

WEEKS
*vs.*
FLOWER ET AL.

This suit commenced by injunction. It appears the defendants, under a judgment which they had obtained against one Rachel O'Connor, in 1832, caused an execution to issue, directed to the sheriff of the parish of West Feliciana, and instructed him to levy on ten bales of cotton, besides other cotton in the gin house and in the field, and on twenty-six slaves, all of which is alleged to be the property of the petitioner, and which he alleges the defendants knew belonged to him, but nevertheless, caused it to be seized under the pretext that it belonged to the defendants in execution. He further states, that the sheriff has advertised said property for sale; wherefore, he prays for an injunction to restrain and prohibit said sale, and that it may be declared to belong to him, and that he have judgment for five thousand dollars in damages which he has sustained in consequence of said illegal seizure. An injunction was granted as prayed for. The defendant admits the seizure of the property in contest, but avers that after the institution of his suit against Mrs. O'Connor, and before he obtained the judgment on which execution issued, under which the property was seized; she, with the intent to defraud her creditors, especially the defendant and his co-partner David Flower, colluded and confederated with the plaintiff to prevent the recovery of their just debts; and on the 5th of June, 1829, conveyed to the plaintiff, by act under private signature, nineteen slaves; and on the 15th of March, 1830, she conveyed to said plaintiff, by public act passed before the parish judge of West Feliciana, the tract of land on which she resided, her stock of horned cattle, horses and sheep, and thirty slaves, &c., being property she then possessed, for the aggregate sum of nine thousand dollars, &c., without leaving sufficient property to pay her debts, &c. The defendants charge that said acts of sale are fraudulent, as well on the part of the plaintiff, who had notice of the defendants' claims, as Mrs. O'Connor, and made in collusion between them; that said pretended

sales were made without a fair and legal consideration, and no delivery of the property sold was ever made to the pretended purchaser. He prays that the property seized be declared to belong to Mrs. O'Connor, and liable to his execution, and that the injunction be dissolved.

The plaintiff moved to strike out of the answer the part which charges fraud, want of consideration, and invalidity in the said acts of sale, because they cannot be tried in this form of action ; the validity of the sales cannot be tested by the seizures which are enjoined, but in a direct action to annul and set them aside.

The court overruled this motion and allowed the entire issue to go before the jury. The decision of the court was excepted to. The plaintiff renewed his motion to strike out, on the further trial of the cause, on the ground that the matters embraced in said answer are the subject of another suit between the defendant and the plaintiff herein, which has for its object the cancelling of said sales as the identical grounds alleged in this. The court overruled the motion, which opinion of the court was excepted to.

While the trial was in progress, the sole counsel for the plaintiff spread upon the record a statement that he was incapable from indisposition to discharge his duty to his client, and prayed the court to postpone the further trial of the case from Saturday morning until the following Monday, which was refused, and a bill of exception taken to the decision of the court.

Parole evidence was received to prove the circumstances attending the levy made on the property in contest ; and also to show the manner in which the sales of said property were made to the plaintiff, Weeks.

The jury returned a verdict for the defendants ; upon which the court rendered judgment, dissolving the injunction, and decreeing the plaintiff to pay costs. He appealed.

*Conrad*, for the plaintiff.

1. The injunction should have been made absolute until the sale from Rachel O'Connor to the plaintiff, had been

revoked by a direct action instituted for that purpose. The property conveyed by it could not be seized for a debt of the vendor. *Louisiana Code, articles* 1964, 1965, 1966. 5 *Martin, N. S.,* 362. *Ibid.* 633. 6 *Martin, N. S.,* 137, 580. 6 *Ibid.* 324. 2 *Louisiana Reports,* 214.

2. Even supposing that the bill of sale in this case, should be considered as a mere act *sous seing privé;* in consequence of any defect in its form, still the distinction which has been drawn between authentic acts and those under private signature in relation to this subject, will not avail the defendants in this case. That distinction, though not expressly recognised in those articles of the Code which grant the revocatory action, and regulate its exercise, has been founded by this court on two considerations. 1st. Because third persons could not be presumed to have knowledge of alienations made *sous seing privé* not recorded. 2d. That such instruments have no legal date, except that of their production in court. Now neither of these considerations applies to the present case. The sale, even supposing it defective in form, formed a part of the record of the parish judge's office, and conveyed as full information of the fact, as if it had been perfect in point of form. *Martel* vs. *Trudeau's heirs.* Besides an authentic act, or one *sous seing privé,* duly recorded, only creates a presumption of knowledge, frequently unfounded in fact, and this court has frequently held that actual knowledge is equivalent to registry, and dispenses with the proof of it. 2 *Martin, N. S.,* 171. 4 *Ibid., N. S.,* 378. 8 *Ibid., N. S.,* 140. *Louisiana Code, article* 2242.

3. Now, the evidence on the record fully establishes that the defendants were fully apprised of the sale, long before issuing the *fieri facias,* and that in fact at that very moment a suit instituted by them long before, to set aside the sale, on the same grounds on which it is attacked now, was still pending.

4. In their answer in this suit, they in fact admit that there was a sale by authentic act. But they certainly admit both in that answer, by their indemnity bond to the sheriff, &c., that a sale of the property had been made.

5. As to the second ground of distinction, the want of a date to instruments under private signature, the date of the present one is fully established to have been what it purports to be. On this point the attestation and signature of the judge, or sworn officer, acting in the performance of his legal functions, must distinguish this act from an ordinary one *sous seing privé.* Although this signature may not invest it with the character of an authentic act, it certainly gives to it some additional faith and credit, in deciding on the mere fact of its genuineness. But independent of this, its date is established by the testimony of Swift and Johnson, and by the suit instituted to annul it a long time previous to the seizure, and by the indemnity bond.

6. But lastly, the property was delivered to plaintiff's overseer; the possession of the last was that of their employer: "*qui possidet per alium, possidet per se.*" See *Louisiana Code, article* 3396. The plaintiff has, ever since the sale been exercising unequivocal acts of ownership over the property sold, and the place was entirely under his control; the overseers employed and paid by him; some of the negroes sent to another plantation owned by him in a distant part of the state; the crop marked in his name and consigned by him to his merchant in this city, sold on his account and the proceeds placed to his credit.

The cotton seized had certainly been delivered to him before the sale. *Louisiana Code, article* 2243. *Digest, lib.* 39, *title* 5, *ls.* 6 *and* 13. *Ibid.* 18, *title* 6, *l.* 14.

*Worthington*, for the defendant, made the following points in argument:

1. The sale from Mrs. O'Conner to the plaintiff, Weeks, was a fraudulent sale, made with a deliberate intention to defraud her creditors, and particularly the defendant to this action.

2. That a sale made with a deliberate intention to defraud either, avowed by the parties to such sale, or found by a jury, is null and void, and can communicate no title to the fraudulent vendee. 2 *Louisiana Reports*, 78. 6 *Toullier*, 395.

3. That in all cases where the plaintiff claims a right under such conveyance, that right may be attacked by the introduction of evidence to show the fraud, and the consequent want of title in the plaintiff.

4. That if there is any thing in the jurisprudence of this state, which conflicts with this right, it is confined to cases where the possession, real and bonâ fide, accompanies the deed.

5. That here there was no valid possession taken by the vendee.

6. That this was an action for vindictive damages, in which the defendant was entitled to exhibit a want of possession and title in the plaintiff.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff, David Weeks, alleges, that the defendants, W. & D. Flower, having obtained a judgment against Rachel O'Conner, caused a *fieri facias* to issue, and that the sheriff had levied on certain cotton and slaves, which they well knew to be the property and in possession of the plaintiff, He prays a judgment for five thousand dollars damages, and an injunction.

The defendants deny that the plaintiff was in possession of the property at the time of the seizure, and they allege, that there was a simulated sale from their debtor, Rachel O'Conner, to her brother, the plaintiff, entered into collusively with a view of defrauding them, and that the pretended vendor always retained possession. They pray that the property seized may be declared to be that of Mrs. O'Conner, and subject to their seizure.

The case was tried by a jury, whose verdict was in favor of the defendant, and the plaintiffs appealed.

The plaintiff's counsel moved the court to strike out all that part of the defendant's answer, which alleges fraud and want of consideration, and invalidity in the sales from Mrs. O'Conner to Weeks, on the ground that these questions could not be tried in this form, and tested by a seizure in the first instance. This motion being overruled, he excepted,

and the case turns principally on the correctness of that ruling of the District Court.

It has been settled by repeated decisions of this court, that when a purchaser is in possession under a conveyance, the question of fraud cannot be inquired into collaterally, commencing with a seizure; but the party complaining must bring a direct revocatory action. 5 *Martin, N. S.*, 361.

We are still satisfied, that the principle is a correct one; but it will be found, that in all the cases which have turned upon that principle, the purchaser was in possession. If effect were given to a conveyance, alleged to be collusive and simulated, and not accompanied by possession, it would be a clear violation of that provision of the code, which declares, "that the sale of immoveables or slaves, made under private signature, shall have effect against the creditors of the parties, and against third persons in general, only from the day such sale was registered in the office of a notary, and the actual delivery of the things took place." *Louisiana Code*, 2417.

The present case differs, in some essential particulars, from any other which has heretofore come before this court. In the first place, the plaintiff sues for vindictive damages, alleging his possession, and that the defendants well knew that he was the owner and possessor. With a view of repelling this action for damages, which is rather one of trespass than a mere opposition and injunction, to be tried summarily without a jury, the defendants had, in our opinion, a right to allege and show that the pretended vendor was in fact still in possession, and that the contract on which the plaintiff bases his right, was but a simulation, and intended to cover the property from the defendants' claim. No objection was made to the questions presented by the pleadings, being tried by a jury, and the possession of the plaintiff was necessarily one of the issues submitted, as well as the knowledge on the part of the defendants, that the property did belong to the plaintiff. We are, therefore, of opinion, the court did not err in overruling the motion.

Where a purchaser is in possession under a conveyance, the question of fraud cannot be inquired into collaterally, in a case commencing with a seizure; the party complaining must bring a direct revocatory action.

Where a plaintiff in injunction sues for vindictive damages, alleging his possession of the property seized, and which he has enjoined, the defendant may repel the action, by showing that the contract of sale, under which the plaintiff claims and bases his right, is a simulation, and intended to cover the property from the defendant's claim against the true owner.

49

The plea of *litis pendencia* is a declinatory exception, which comes too late after the swearing of the jury. In order to avail the party, it must show the pendency of another suit between the same parties, for the same object, growing out of the same cause of action, before another court of concurrent jurisdiction.

A continuance will not be granted, after the trial has commenced and evidence gone into, on account of sickness of counsel. It is too late, at this stage of a cause, to pray for a continuance.

There is a second bill of exceptions to the refusal of the judge to reject the same matters of defence, on the ground that there was another suit pending, in which the defendant in this case seeks to avoid the sale from Mrs. O'Conner to Weeks, on the ground of fraud. This second motion to strike out, was made after the swearing of the jury, and in our opinion came too late; but even if it had been made in proper time, we are not satisfied that the exception ought to have prevailed. The exception of the *litis pendentia*, does not appear to us to apply in a case of this kind. It is a declinatory exception, and in order to avail the party, it must show the pendency of another suit between the same parties, for the same object, and growing out of the same cause of action, before *another court of concurrent jurisdiction.* Code of Practice, *article* 335.

A third bill of exceptions was taken to the refusal of the judge to continue the cause on affidavit, after the trial had commenced, on the ground of illness of one of the counsel, and that his colleague had retired from the court, on account of having received intelligence of a recent domestic calamity. Such motions are always addressed to the sound legal discretion of the court; but this court has often decided, that after the trial has been gone into, and evidence heard, it is too late to pray for a continuance. 12 *Martin's Reports,* 635.

On the merits, the cause was tried by a jury, upon the issue joined in the pleadings, and the judgment of the court founded on the verdict, was, that the injunction should be dissolved. Nothing was decided as to the title of any part of the property, except that which had been under seizure. The evidence appears to have satisfied the jury, that the sale from Mrs. O'Conner to Weeks was not real, but simulated, and that the property seized had not been delivered to the plaintiff, and was still liable to be seized in execution, at the suit of her creditors. It does not appear to us, that justice requires the interference of this court with the verdict.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.